BARKETT, Chief Justice.
Under the provisions of article V, section 9, of the Florida Constitution, the Florida Supreme Court is responsible for determining the need for an increase or decrease in the number of judges required to consider and dispose of cases filed before the respective courts. To this end, we have analyzed case filings and evaluated the growth in the workload of the State Courts System over the past several years, in light of additional judgeships which have been authorized each year by the Florida Legislature.
As the result of this review, we certify the need for four district court of appeal judges, eleven circuit court judges, and seven county court judges. A comparison of the requests for new judges filed by the respective courts and the new judgeships certified as needed for fiscal year 1993-94 follows:
*1245 [[Image here]]
*1246 Florida Rule of Judicial Administration 2.035(b)(2) sets forth the criteria for certification of need for additional judges in the district courts of appeal. The Court received requests for two additional judge-ships each from the First and Second District Courts of Appeal. We certify the need for these four judges. In evaluating this request, we gave the greatest weight to past and projected filings.
The last judgeship authorized for the First District Court of Appeal was effective in January 1990. Two judgeships were certified as necessary in both 1991 and 1992, but they were neither authorized nor funded by the Florida Legislature. It is projected that from 1989 to the end of 1993 total filings for the First District Court of Appeal will have increased by 1,285 cases. This represents a 37 percent increase. This growth trend is consistent in all categories of cases, including criminal, civil, administrative, and workers’ compensation matters. Additionally, the First District Court of Appeal has exclusive jurisdiction to hear workers compensation appeals and handles a disproportionate share of appeals of administrative rulings. These factors are sufficient to justify two additional judge-ships for the First District Court of Appeal.
The Second District Court of Appeal has experienced substantial growth in its caseload since the last judgeship for that court was authorized in January 1989. It is projected that from 1989 to the end of 1993 total filings for the Second District Court of Appeal will have increased by 1,667 cases. This represents a 47 percent increase. Almost half of this growth will occur in 1992 and 1993. This growth trend is consistent in all categories of cases, including criminal, civil, and administrative matters. These factors are sufficient to justify two additional judgeships for the Second District Court of Appeal.
Florida Rule of Judicial Administration 2.035(b)(1) sets forth the criteria for certification of need for judges at the trial court level. As with certifications in recent years, we have placed the greatest weight on statistical data reflecting the growth and composition of caseloads in the various circuits and counties. We have determined that the most consistent and reliable factor at the circuit court level is total case filings per judge. Criminal, civil, probate, family, guardianship, mental health and juvenile case filings for each circuit are also evaluated by applying different weights reflecting their differential requirements for judicial hearing time and attention. The filings per judge statistics for the county courts are adjusted to exclude worthless check and civil traffic infractions. In addition to those factors prescribed in Florida Rule of Judicial Administration 2.035, other criteria we considered included the use of county and senior judges on temporary assignment; the availability of supplemental hearing resources furnished by the counties (traffic magistrates, child support hearing officers, and general or special masters); reliance on mediation and arbitration to resolve cases; and special local circumstances that affect case handling.
The need for additional judgeships at the circuit court level is greater than in the past two years. We certified the need for only eight circuit judges in fiscal 1991-92 and 1992-93. We find it necessary to certify the need for eleven circuit judges this year, including one additional circuit judgeship for the Third, Fifth, Sixth, Tenth, Eleventh, Twelfth, and Thirteenth , judicial circuits, and two additional circuit judgeships for the Ninth and Twentieth judicial circuits.
Our data shows that the rate of growth in filings in the circuit courts began to increase in 1992 after a period of slow growth between 1989 and 1991. Criminal, juvenile, family, probate, guardianship and mental health filings are projected to grow significantly through 1993. Much of this growth is attributed to a substantial increase (over 10 percent) in violent criminal filings, domestic violence petitions and delinquency petitions. Circuit civil filings are *1247 projected to be down almost four percent from 1991 to 1993, largely due to a significant decrease in contract and indebtedness cases. This decrease is primarily due to the change in the monetary jurisdiction of the circuit court from $5,000 to $15,000, over the past two years.
Based on the caseload trends discussed above, we find compelling justification for eleven new circuit court judgeships. All but one of the courts for which new circuit judgeships are certified are projected to have 1993 filings levels above the 1,865 filings per judge threshold, at which this Court has determined there is a presumptive need for more judicial resources. Other factors, such as geographical constraints affecting judicial assignments, reliance on senior judges on temporary assignment, and historical assignments of county judges to hear circuit court matters, weighed heavily in our decisions for selected circuits.
These judgeships are critical to the ability of the circuit courts to keep up with caseloads. Since the last circuit judges were added in January, 1991, significant delays in obtaining a trial date or hearing on a motion are developing. We must ensure criminal dockets are adequately covered. Likewise, we must be concerned about the resulting congestion in civil calendars. We find that intolerable delays will only worsen if the additional judge-ships we have certified are not authorized and funded. The eleven circuit court judgeships we find to be needed are the absolute minimum required to meet our constitutional mandates. Authorization of these judges will not enable us to reverse the trends discussed above, but they are crucial to our ability to avoid greater delays than are currently the norm in many circuits.
Our request for additional county judges is very limited this year. One additional judgeship is deemed necessary for Bro-ward, Hillsborough, Orange, Osceola, Clay, Brevard, and Palm Beach counties. All of these counties have realized steady increases in filings and all are ranked among the top ten counties in filings per judge.
In evaluating the need for additional judges we relied principally on filings data. The filings data were adjusted to exclude highly variable counts of civil infractions and worthless checks because of their limited .requirements for judicial time. We looked at the total filings, including criminal, civil and DUI cases. We also added and considered other criminal traffic matters at the recommendation of the Court Statistics and Workload Committee. Finally, we evaluated the extent to which county judges have served as circuit judges, in courts requesting additional circuit or county judges.
Article V, section 2(b) of the Florida Constitution permits county judges who are qualified to serve on the circuit court to be assigned temporarily to hear matters within the jurisdiction of the circuit courts. Such assignments are often necessary and indeed, critical to the effective management of caseloads in many circuits. However, the failure of lawmakers to authorize and fund additional judges, which were certified as necessary by this court in the past two legislative sessions, has forced an increasing reliance on county judges to address workload pressures in the circuit courts. This has occurred to a greater extent in urban jurisdictions. In some cases, county judges appear to have been assigned to circuit court full time for a year or more. These assignments are detrimental to case handling in county courts and are contrary to the intent of the assignment authority in Article V of the Constitution.
In view of these circumstances this Court has elected to withhold certification of some of the additional county judges requested by selected urban courts pending a review of local assignment practices, even though their requests may be justified on the basis of caseload statistics. The Court directs that this review be conducted by the *1248 Court Statistics and Workload Committee, with the assistance of the Office of the State Courts Administrator. It is to involve study of (1) the manner in which all active circuit and county judges are assigned, (2) the extent of utilization of county judges in circuit court, (3) the use of •senior judges, and (4) the availability and use of supplemental hearing resources such as traffic magistrates, child support hearing officers and general or special masters. The Committee is to make recommendations on how the Court can better evaluate requests for additional judgeships in the larger, urban jurisdictions and propose any additional policy or criteria it believes would be helpful to the court in making its certification of need for additional judges.
Full funding for the requests certified as needed herein is deemed absolutely essential if Florida’s courts are to fulfill their constitutional mandate to try cases in a fair, impartial, and timely manner.
It is so ordered.
overton, McDonald, shaw, GRIMES, KOGAN and HARDING, JJ., concur.